**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

TERRY BERNARD BLACK
YOLANDA DENISE BLACK

        Debtors

Case No. 3:19-bk-31280-SHB
Chapter 13

**MEMORANDUM ON
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**APPEARANCES:**   LAW OFFICES OF MAYER & NEWTON
    John P. Newton, Esq.
    Richard M. Mayer, Esq.
    1111 Northshore Drive
    Suite S-570
    Knoxville, Tennessee  37919
    Attorneys for Debtors

    FIDELITY NATIONAL LAW GROUP
     Brian Linkowski, Esq.
     4170 Ashford Dunwoody Road
     Suite 475
     Atlanta, Georgia  30319
     Attorney for Creditors PHH Mortgage Corporation, as loan servicer for
     Wells Fargo Bank, N.A. as Trustee for Park Place Securities, Inc. Asset-
     Backed Pass-Through Certificate Series 2004-WHQ2

**SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE**

Debtors commenced this contested matter on July 22, 2019, by objecting to the claim filed by PHH Mortgage Corporation, as loan servicer for Wells Fargo Bank, N.A. as Trustee for Park Place Securities, Inc. Asset-Backed Pass-Through Certificate Series 2004-WHQ2 ("PHH") on July 22, 2019 [Claim No. 7] ("Objection to Claim"). [Doc. 41.]  The matter is currently before the Court on PHH's Motion for Summary Judgment Against Debtors' Objection to its Proof of Claim ("Motion for Summary Judgment") filed on January 27, 2020. [Doc. 78.]  The Motion for Summary Judgment is supported by PHH's Statement of Material Facts as to Which There Exists No Genuine Issue to be Tried [Doc. 80], the Declaration of PHH Mortgage Corporation with exhibits 1 through 7 ("PHH Declaration") [Doc. 78-3, 80-1], and the Memorandum of Law in Support of Motion for Summary Judgment [Doc. 79].  Debtors responded by filing their Response to Motion for Summary Judgment [Doc. 84] and their Response to Creditor' [sic] Statement of Material Facts [Doc. 85] with Affidavits of both Debtors attached ("Debtors' Affidavits") [Docs. 85-1, 85-2], to each of which is attached an identical exhibit, the Web Services Summary Data Results from the Knox County Register of Deeds [Docs. 85-1, 85-2 at pp. 4-5].[1]

Pursuant to Federal Rule of Evidence 201, the Court also takes judicial notice of documents filed in this and Debtors' Chapter 7 bankruptcy case filed on July 10, 2008 (Case No. 3:08-bk-32973-rs ("2008 Case")). *See In re Morton*, No. 3:15-bk-30892-SHB, 2015 WL 5731859, at *1 (Bankr. E.D. Tenn. Sept. 30, 2015); *In re Leonard*, No. 09-32725, 2009 WL 1475138, at *2 (Bankr. E.D. Tenn. May 22, 2009).

---

[1] PHH filed a Reply to Debtors' Response to its Motion for Summary Judgment [Doc. 87]; however, the reply is not authorized by the Local Rules or the Order setting the briefing schedule [Doc. 74], and PHH did not seek leave of Court.  Accordingly, the reply has not been considered by the Court.

## I. UNDISPUTED FACTS

On August 16, 2002, a warranty deed was recorded in the Knox County Register of Deeds, reflecting the transfer to Debtors of the property at issue in this matter, 4501 Greendale Road, Knoxville, Tennessee (the "Property") and bearing instrument number 200208160013910 ("Warranty Deed"). [Docs. 85-1, 85-2 at p. 5.] On the same date, two trust deeds were recorded, respectively in favor of Conseco Bank Inc. and Cheryl Roach (the former owner from whom Debtors purchased the Property by the Warranty Deed), bearing instrument numbers 200208160013911 and 200208160013912. [*Id.*] Although Debtors did not explain these recorded documents, and although these facts do not appear to be material to the Court's determination here, it appears that Debtors purchased the Property with both owner-financing and third-party financing.

On August 19, 2003, another trust deed was recorded in favor of Argent Mortgage Company LLC, bearing instrument number 200308190020741 (the "2003 Trust Deed"). [*Id.*] Debtors acknowledge that they signed documents to refinance a loan of the Property with Argent Mortgage in 2003. [Docs. 85-1, 85-2 at ¶ 5.] Following recordation of the 2003 Trust Deed, on February 11, 2004, the trust deed in favor of Ms. Roach was released by instrument number 200402110076826. [*Id.* at pp. 4-5.] The trust deed in favor of Conseco Bank Inc. was not released until July 26, 2004, by instrument number 200407260007543. [*Id.* at p. 4.]

On October 7, 2004, another trust deed in favor of Argent Mortgage Company LLC was recorded, bearing instrument number 200410070029880 (the "2004 Trust Deed"). [*Id.*] The 2004 Trust Deed is the basis of PHH's secured claim in this matter. [Doc. 80 at ¶¶ 2-3; Doc. 85

at ¶¶ 2-3.[2]] The 2004 Trust Deed was executed[3] on the same date as the Fixed Rate Note (the "Note"), i.e., September 28, 2004. [Doc. 80-1 at pp. 17-18, 20-35.] Argent Mortgage Company LLC released the 2003 Trust Deed on November 10, 2004, by instrument number 200411100039396. [Docs. 85-1, 85-2 at p. 4; Doc. 54-2.]

Although a copy of the 2003 Trust Deed is not of record before this Court, the release of the 2003 Trust Deed identifies the date of the 2003 Trust Deed as August 1, 2003. [Doc. 54-2.] This is important because the record contains documents related to the closing of the Note and 2004 Trust Deed [Ex. 3 to Doc. 80-1], created and maintained in the ordinary course of business, such documents including a Customer Identification Documentation Patriot Act and an I.D. Verification Form, both of which reference Debtors' Tennessee driver's licenses, and a copy of Debtor Yolanda Black's driver's license. [Doc. 80-1 at pp. 39, 41-42.] As it happens, Ms. Black's driver's license contained within the closing file related to the Note and 2004 Trust Deed was issued on August 14, 2003.[4] [Doc. 80-1 at p. 39.] Debtors assert (in argument, not in sworn statements) that "[b]oth the Debtors and lender were defrauded in 2004 by a local title company along with their employees, notary and agents." [Doc. 86 at p. 3.] The date of Mrs. Black's driver's license located in PHH's records matters because the 2003 Trust Deed was executed on August 1, 2003, before issuance of the driver's license on August 14, 2003, so that the "local title

---

[2] Debtors dispute that the 2004 Trust Deed encumbers the Property, but they do not dispute that the 2004 Trust Deed is the basis for PHH's secured claim. [*See id.*]

[3] Debtors dispute that the September 28, 2004 signatures on the 2004 Trust Deed and Note are theirs. They expressly state that the signatures are forged. [Docs. 85 at ¶¶ 3-4.] Thus, the Court finds undisputed that the Note and 2004 Trust Deed were signed (by someone) on September 28, 2004.

[4] PHH redacted from the documents the dates of the driver's licenses except for the date of Mrs. Black's license on the "Customer Identification Document Patriot Act." The Court notes that the facsimile header on this document reflects a date of September 16, 2004, some twelve days before execution of the Note and 2004 Trust Deed. [Doc. 80-1 at p. 40.] The Court finds it reasonable to infer from these undisputed documents that Mrs. Black's driver's license was provided in connection with the September 28, 2004 transaction, likely as part of the loan application package.

company" could not have used a copy of the driver's license provided for the August 1, 2003 closing to further a fraudulent scheme relating to the Note and 2004 Trust Deed.[5]

On July 10, 2008, Debtors filed a Chapter 7 petition in this Court. [Voluntary Petition, 2008 Case (July 10, 2008), ECF No. 1.] They included the Property on Schedule A and scheduled a "[f]irst mortgage" in favor of HomeEq Servicing for an "[a]ccount opened **10/04**." [*Id.* at pp. 10, 15 (emphasis added); *see* Doc. 80 at ¶¶ 6-7; Doc. 85 at ¶¶ 6-7.] Debtors admit that they scheduled a first mortgage but say that they "believed this was the original loan since they were not given a copy of the forged 'loan' papers as part of this case and had never seen the forged Note or [2004 Trust] Deed." [Doc. 85 at ¶ 6.] Notably, however, Debtors expressly scheduled the mortgage as having been opened in October 2004 even though they now say that "[a]t all times [they] assumed the loan on [their] home was the loan we went to sign to refinance with Argent mortgage in **2003**." [Docs. 85-1, 85-2 at ¶ 5 (emphasis added).]

In the 2008 Case, Debtors also filed a Chapter 7 Individual Debtor's Statement of Intention, indicating their intent to reaffirm the debt owed to HomeEq Servicing. [2008 Case (July 10, 2008), ECF No. 9.] On September 3, 2008, the owner of the Note and 2004 Trust Deed filed a Reaffirmation Agreement that had been executed by Debtors. [Reaffirmation Agreement, 2008 Case (Sept. 3, 2008), ECF No. 19; Doc. 80 at ¶ 10; Doc. 85 at ¶ 10.] Relevant to this contested matter, the Reaffirmation Agreement provides:

> d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's good or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

---

[5] The Court also notes that the Customer Identification Documentation Patriot Act was signed by a different person than the notary who acknowledged the 2004 Trust Deed. [*Compare* Doc. 80-1 at p. 39 *with* Doc. 80-1 at p. 34.]

| Item or Type of Item | Original Purchase Price or Original Amount of Loan |
| --- | --- |
| Real property located at 4501 Greendale Road, Knoxville, Tennessee 37918 | $135,900.00 |

. . . .

**2. INSTRUCTIONS AND NOTICE TO DEBTOR**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. . . .

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B . . . .

**YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT**

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. . . .

. . . .

**PART B: REAFFIRMATION AGREEMENT**.

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement:
*Note and Mortgage executed on September 28, 2004*

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement: NONE

[*Id.* at pp. 4-6, 8 (emphasis by italics added)[6]; Doc. 80 at ¶¶ 11-13; Doc. 85 at ¶¶ 11-13.]

---

[6] Debtors admit their agreement to reaffirm "the debts arising under the credit agreement described below" (which specifically identifies the "Note and Mortgage executed on September 28, 2004") but say that "it was a 'boiler plate' wording in the agreement [and] the Debtors never saw the loan documents held by this creditor." [Doc. 85 at ¶ 13.]

Debtors were represented in the 2008 Case by Justin A. Brackett[7] [Doc. 80 at ¶ 15; Doc. 85 at ¶ 15], who the Court recognizes as an experienced bankruptcy practitioner who filed more than 150 cases in 2008 alone. Mr. Brackett certified that "(1) th[e Reaffirmation Agreement] represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement." [Reaffirmation Agreement, 2008 Case (Sept. 3, 2008), ECF No. 19, p. 9; Doc. 80 at ¶ 16; Doc. 85 at ¶ 16.] Debtors state that the Note and 2004 Trust Deed "were not seen or known to [them] until sometime around 2016." [Docs. 85-1, 85-2 at ¶ 5.] Thirteen days after the Reaffirmation Agreement was filed with the Court, however, Wells Fargo Bank, N.A. filed its proof of claim. [Proof of Claim, 2008 Case (Sept. 16, 2008), Claim No. 1-1.] Attached to the proof of claim were the Note and 2004 Trust Deed. [*Id.*] Although Wells Fargo did not serve the proof of claim on Debtors personally, it was served on Debtors' counsel. [*Id.* at p. 4.]

Debtors made payments under the terms of the Note and 2004 Trust Deed as purportedly modified by a mortgage loan modification dated June 19, 2009,[8] but an arrearage accrued from

---

[7] The Court notes that the Chapter 7 Trustee in the 2008 Case was John P. Newton, Jr., who serves as Debtors' counsel in the current case. Had he discovered in 2008 that Debtors disputed their signatures on the 2004 Trust Deed, he would have been obligated to investigate their claims and might have sought to avoid the lien for the benefit of creditors under 11 U.S.C. § 544(b)(1). Debtors' testimony at the meeting of creditors in the 2008 Case must not have raised any issue for Mr. Newton as the Chapter 7 Trustee, and he abandoned assets on October 3, 2008, some fifty-one days after the meeting of creditors. [Trustee's Report of No Distribution, 2008 Case (Oct. 3, 2008).] PHH has not moved to disqualify Mr. Newton from representing Debtors in this case.

[8] PHH also submitted in support of its Motion for Summary Judgment a Modification Agreement dated June 19, 2009, and purportedly signed by Debtors on June 30, 2019, between Debtors and HomEq Servicing, the same servicer that executed the Reaffirmation Agreement. [Doc. 80-1 at pp. 44-45.] Debtors responded by stating, "We have examined Exhibit 5 'Modification Agreement' and assert those signatures are also forged." [Docs. 85-1, 85-2 at ¶ 11.] The authenticity of the Modification Agreement being disputed by Debtors, the Court does not consider it for purposes of the Motion for Summary Judgment, except to note that Debtors' assertion would require the Court to believe that Debtors are the victims of two distinct and independent instances of forgery and fraud five years apart: (1) their signatures on the 2004 Trust Deed [Doc. 80-1 at p. 33] and (2) their signatures on the Modification Agreement [Doc. 80-1 at p. 45].

time to time. [Doc. 80 at ¶¶ 22, 25-28; Doc. 85 at ¶¶ 22, 25-28.] The arrearage owed under the Note and 2004 Trust Deed, as modified, totaled $18,996.12 as of the petition date in this case. [Doc. 80 at ¶ 26; Doc. 85 at ¶ 26.[9]]

## II. SUMMARY OF THE ISSUES

PHH raises several grounds for summary judgment: (1) judicial estoppel, (2) res judicata, (3) statute of limitations, (4) notary presumption on the 2004 Trust Deed, (5) ratification, and (6) equitable estoppel. [Doc. 79 at p. 4.] Debtors respond that PHH's claim of a lien on the Property cannot be maintained because forged liens in Tennessee are "null and void" – not voidable – so that Debtors can defeat summary judgment simply by their sworn affidavit testimony that they did not execute the 2004 Trust Deed. [Doc. 86 at pp. 1-3 (citing *Beazley v. Turgeon*, 772 S.W.2d 53, 59 (Tenn. Ct. App. 1988).] Citing Tennessee Code Annotated section 66-26-110(a) and(b), Debtors argue that the presumption of regularity by notarization on the 2004 Trust Deed is rebuttable and that their denials in their affidavits are sufficient to create a genuine issue of material fact sufficient to defeat summary judgment. [Doc. 86 at pp. 4, 7.]

Because under Tennessee law, a notary acknowledgment on a deed cannot "be overthrown by the unsupported testimony of the grantor," *Mynatt v. LeMarr*, No. E2013-02347-COA-R3-CV, 2014 WL 4412346, at *7 (Tenn. Ct. App. Sept. 9, 2014 (quoting *Kyle v. Kyle*, 74 S.W.2d 1065 (Tenn. Ct. App. 1934) (quoting *Shields v. Netherland*, 73 Tenn. 193 (Tenn. 1880))), the Court finds that Debtors have failed to provide "concrete evidence establishing a genuine issue of material fact," *Biszantz v. Stephens Thoroughbreds*, 620 F. App'x 535, 541 (6th

---

[9] Debtors' response that they "[a]dmitted the forged loan had an arrearage [but] neither admitted nor denied the amount" [Doc. 85 at ¶ 26] is not a response adequate to dispute PHH's statement of undisputed facts as to the arrearage due under the documents. *See* E.D. Tenn. LBR 7056-1(b) (requiring a response that either agrees a fact is undisputed, is undisputed for purposes of summary judgment only, or "is disputed as demonstrated by specific citation to material allowed by Fed. R. Civ. P. 56(c). Absent a response in accordance with the requirements of this subdivision, the material facts set forth in the movant's statement will be deemed admitted.").

Cir. Oct. 27, 2015), to satisfy their burden to prove by "'full, convincing, and conclusive' evidence that the [2004 Trust Deed] was forged and the acknowledgment was somehow false." *Mynatt*, 2014 WL 4412346, at *6. Additionally, the Court finds that the undisputed facts establish that Debtors are judicially estopped by their filings in the 2008 Case. Accordingly, PHH is entitled to summary judgment overruling Debtors' Objection to Claim.

### III.  ANALYSIS

#### A.  Rule 56 – Standard for Summary Judgment

Federal Rule of Civil Procedure 56, which is applicable to contested matters by virtue of Rule 9014(c) of the Federal Rules of Bankruptcy Procedure, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[,]" utilizing the procedures defined in subsections (c)(1) through (c)(4). When deciding a summary judgment motion, the Court does not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine issue for trial exists, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

PHH, as movant, bears the burden of proving that the record presented to the Court establishes the lack of a genuine dispute of material fact such that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir. 2001). "A genuine dispute of material fact exists when 'there is sufficient evidence favoring the nonmoving party for a [fact-finder] to return a verdict for that party.'" *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (quoting *Anderson*, 477 U.S. at 249). "[The] party seeking summary judgment always bears the initial

responsibility of informing the [trial] court of the basis for its motion[,]" *Celotex Corp.*, 477 U.S. at 323, and "[a]s the party moving for summary judgment, [PHH] bear[s] the burden of showing the absence of a genuine issue of material fact as to at least one essential element of [Debtors'] claim[s]." *Laster*, 746 F.3d at 726.

Once the initial burden of proof is met, the burden shifts to the nonmoving party to prove that there are genuine disputes of material fact for trial, but reliance solely on allegations or denials contained in the pleadings is insufficient because a "mere scintilla of evidence in support of the nonmoving party will not be sufficient." *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 563 (6th Cir. 2006); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A). The Court views the facts and all resulting inferences in a light most favorable to Debtors to decide whether "the evidence presents a sufficient disagreement to require submission to a [fact-finder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 243. Summary judgment is appropriate only if the fact-finder could not find for the non-moving party based on the "the record taken as a whole." *Matsushita*, 475 U.S. at 587.

Concerning Debtors' burden of proof in this case, which requires "'full, convincing, and conclusive' evidence that the [2004 Trust Deed] was forged and the acknowledgment was somehow false," *Mynatt*, 2014 WL 4412346, at *6, the Sixth Circuit Court of Appeals has held:

> "[A]ny heightened burden of proof required by [governing] substantive law for an element of the [non-moving party]'s case, such as proof by clear and convincing

evidence, must be satisfied by the [non-moving party]" in order to survive summary judgment. *Beal ex rel. Putnam v. Walgreen Co.,* 408 F. App'x 898, 902 (6th Cir. 2010) (quoting *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989)). In other words, the nonmoving party must "show in opposition to the motion for summary judgment that [it] can produce evidence which, if believed, will meet the higher standard." *Inge v. Rock Fin. Corp.,* 388 F.3d 930, 938 (6th Cir. 2004).

*Local Union 2-2000 United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied-Indus., Chem. & Serv. Workers Int'l Union v. Coca-Cola*, 547 F. App'x 707, 719 (6th Cir. Nov. 8, 2013) (alterations in original).

### B.  Presumption of Regularity by Notary Acknowledgment

The Tennessee Court of Appeals recently reiterated the longstanding requirement that a party asserting forgery on a deed that bears a notary acknowledgment must provide more than the "unsupported testimony of the complainant":

> In *Kennedy v. Security Building & Savings Association*, 57 S.W. 388, 394 (Tenn. Ch. App. 1900), it was held that a deed of trust should not be set aside on the unsupported testimony of the complainant, a married woman, that she did not appear before the officer and acknowledge the deed, and that his certificate was false. The notary public taking the acknowledgment acts judicially and the duty is imposed upon him by law of ascertaining the truth of the matters about which he is to certify. In the opinion in that case it is recited that in *Lickmon v. Harding*, 65 Ill. 505 (Ill. 1872), a deed properly certified and acknowledged on its face was assailed on the ground that the certificate of acknowledgment was false and a forgery, and that the party never appeared before the officer; that the Court held that the certificate could not be overthrown by the unsupported testimony of the grantor, saying: "Public policy requires that such an act should prevail over the unsupported testimony of an interested party, otherwise there would be but slight security in titles to land. If the magistrate, in taking the acknowledgment, acts judicially, the duty is imposed upon him by law of ascertaining the truth of the matters about which he is certifying. Parties act in the faith of this certificate, and, in the absence of fraud and collusion, it must be entitled to full credit."
>
> In this state it has been definitely held that the act of the certifying officer is in the nature of a judicial act, an essential part of the conveyance, and the probate of it can only be attack[ed] for fraud. *Shields v. Netherland*, 73 Tenn. 193, 5 Lea. 193 (Tenn. 1880).

*Mynatt*, 2014 WL 4412346, at *7.

Other courts have illustrated the application of this burden of proof in the summary judgment context. In *Wayt v. Urbigkit*, 152 P.3d 1057, 1060-61 (Wyo. 2007), the Wyoming Supreme Court affirmed summary judgment for the grantee in a quiet title action even though the grantor provided an affidavit that he had not signed the deed along with a detention officer's affidavit that jail records did not show that the notary had visited the grantor in jail on the date of the notary's acknowledgment. The purported grantor also presented a letter in which the notary asked the grantor to sign the deed. *See id.* at p. 1061. The court recited the same standard cited by the Sixth Circuit concerning summary judgment when clear and convincing evidence is required:

> A party is entitled to a summary judgment only when there are no genuine issues of material fact. In making that determination, we must consider the level of proof required to ultimately prevail on the claim. For example, in fraud cases, where the plaintiff must prove his allegations by clear and convincing evidence, we have stated that in order to counter a summary judgment motion the opponent "must demonstrate genuine issues of material fact even at the summary judgment stage by clear, unequivocal and convincing evidence."

*Id.* at 1060-61 (citation omitted). The court then applied that standard to the presumption that arises from a notary acknowledgment:

> [T]here is a presumption in favor of the correctness of a notary's certificate. In order to overcome the presumption, the grantor must present cogent, clear and convincing evidence that the certificate is false and the grantor's uncorroborated testimony is not sufficient to overcome the presumption. Mr. Wayt argues he overcame the presumption by presenting the jail records, which indicated Mr. Painter did not visit him in the jail on August 5, 1999, and the September 3, 1999, letter from Mr. Painter asking him to sign the deed. Although this evidence does seem to facially corroborate Mr. Wayt's position that he did not sign the deed before Mr. Painter on August 5, 1999, it does not prove Mr. Painter never notarized his signature on the deed. At most, it establishes that there may be a question of fact about the date the deed was signed and acknowledged.

*Id.* at 1061 (citations omitted).

Here, Debtors provided only their own self-serving affidavits, which are insufficient to establish a genuine issue of material fact. In *John Deere Insurance Co. v. GBE/Alasia Corp.*, the court reversed the denial of summary judgment for the plaintiff when the defendants presented only a conclusory affidavit of "an interested witness":

> The defendant Leila Rusin claimed that the signature on the general indemnity agreement (hereinafter the Agreement), pursuant to which the plaintiff seeks recovery, which bore the acknowledgment of a notary public, was not hers. A certificate of acknowledgment attached to an instrument such as a deed raises a presumption of due execution, which presumption, in a case such as this, can be rebutted only after being weighed against any evidence adduced to show that the subject instrument was not duly executed. [A] certificate of acknowledgment should not be overthrown upon evidence of a doubtful character, such as the unsupported testimony of interested witnesses, nor upon a bare preponderance of evidence, but only on proof so clear and convincing so as to amount to a moral certainty. The conclusory affidavit of Leila Rusin, an interested witness, was insufficient to raise a triable issue of fact to rebut the presumption of due execution. Moreover, while Leila Rusin submitted copies of her driver's license and passport, both of which presumably bore her signature, she submitted no evidence, such as the affidavit of a handwriting expert or of a lay witness who was present at the execution of the Agreement or who was otherwise familiar with her handwriting, to establish that the signature on the Agreement was not hers. Accordingly, she failed to raise a triable issue of fact to rebut the presumption of due execution.

869 N.Y.S.2d 198, 200 (N.Y. App. Div. 2008) (internal quotation marks and citations omitted).

The bankruptcy court's decision in *Connelly v. U.S. Bank National Association (In re Connelly)*, 487 B.R. 230 (Bankr. D. Ariz. 2013), also is instructive here. In *Connelly*, the Chapter 13 debtor sought to determine the extent and validity of a lien on his residence because of allegedly false recorded documents and notary fraud relating to the chain of title for the note and deed of trust. *See id.* Granting summary judgment in favor of the mortgage holder, the court held that the debtor had failed to oppose the motion with "'significant probative evidence tending to support' his allegations." *Id.* at 244 (quoting *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007)). The court explained: "Significant probative evidence goes beyond a mere 'scintilla,' and it is "'not enough to show that there is some metaphysical doubt as to the material facts.'""

*Id.* (quoting *Mann v. GTCR Golder Rauner, L.L.C.*, 483 F. Supp. 2d 884, 890 (D. Ariz. 2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))).

Thus, recognizing that "the Court must '"view the evidence in the light most favorable to [Debtors as] the nonmoving part[ies], drawing all reasonable inference in [their] favor, even under that standard, [Debtors] ha[ve] not produced significant probative evidence to cast doubt on the [2004 Trust Deed]." *Id.* (citations omitted). Simply, Debtors have not presented sufficient evidence to create a triable issue of fact to overcome the presumption created under Tennessee law by the facially valid notary authorization in the 2004 Trust Deed.

### C. Estoppel

The Court also finds that summary judgment in favor of PHH is appropriate under the doctrine of estoppel. The Sixth Circuit explained the equitable doctrine of judicial estoppel:

> As an equitable doctrine, judicial estoppel has not been reduced to a hard-and-fast test, but our precedent provides some guiding factors in this context: (1) whether the party assumed a position that was contrary to the one that was asserted under oath in the bankruptcy proceedings; (2) whether the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) whether the contrary position was the result of mistake or inadvertence. *See White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 478 (6th Cir. 2010).

*Haddad v. Randall S. Miller Assocs., PC*, 587 F. App'x 959, 965 (6th Cir. Oct. 17, 2014). Another court further elaborated on the three factors:

> A court "may" consider three factors in determining whether to apply the doctrine of judicial estoppel: (1) "a party's later position must be clearly inconsistent with its earlier position;" (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled;" and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*Perera v. Blue Ribbon Installations, Inc.*, No. CV-04-1668-ST, 2005 WL 8177145, at *12 (D. Ore. Oct. 7, 2005) (quoting *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782-83 (9th Cir. 2001) (quoting *New Hampshire v. Maine*, 532 U.S. 742 (2001))).

Debtors' schedules filed in the 2008 Case were supported by their signatures made under penalty of perjury, and they identified the mortgage on their residence as having been opened in October 2004, even though they now say that "[a]t all times [they] assumed the loan on [their] home was the loan [they] went to sign to refinance with Argent mortgage in *2003*." [Docs. 85-1, 85-2 at ¶ 5 (emphasis added).]  Furthermore, Debtors expressly reaffirmed the "Note and Mortgage executed on September 28, 2004." [Reaffirmation Agreement, 2008 Case (Sept. 3, 2008), ECF No. 19; Doc. 80 at ¶ 10; Doc. 85 at ¶ 10.]  Although Debtors claim that they were not provided with a copy of the Note and 2004 Trust Deed in the 2008 Case, the claim filed by the mortgage holder clearly was served on Debtors' counsel, who by operation of law was Debtors' agent.[10] *See Lampe v. Kash*, 735 F.3d 942, 944 (6th Cir. 2013) ("When a lawyer represents a client, his acts become the client's acts, his knowledge the client's knowledge. . . . Under agency law, notice to the attorney counts as notice to the client . . . .").

Applying the factors for judicial estoppel to these undisputed facts, Debtors' position in this case clearly is inconsistent with their position in the 2008 Case.  Because the Court accepted (1) the Reaffirmation Agreement and (2) the Chapter 7 Trustee's report that abandoned property of the estate [Trustee's Report of No Distribution, 2008 Case (Oct. 3, 2008)] (which was based on the Trustee's acceptance of Debtors' schedules and testimony at the meeting of creditors), "judicial acceptance of [Debtors'] inconsistent position in [this] later proceeding would create

---

[10] Although the proof of claim was filed on September 16, 2008 – i.e., thirty-five days after Debtors executed the Reaffirmation Agreement – Debtors had an additional forty-seven days after the claim was filed in which to rescind the Reaffirmation Agreement that was filed in the 2008 Case on September 3, 2008. *See* 11 U.S.C. § 524(c)(4).

the perception that either the first or the second court was misled." *New Hampshire*, 532 U.S. at 750. Finally, were the Court to allow Debtors' contrary assertion here, they "would derive an unfair advantage [and the Court would] impose an unfair detriment on the opposing party." *Id.* at 751. That is, if Debtors are not estopped by their Schedule A and the Reaffirmation Agreement in the 2008 Case, they would benefit unfairly by the fact that the Chapter 7 Trustee in that case had no fair opportunity to seek to avoid PHH's lien under 11 U.S.C. § 544(b)(1) for the benefit of Debtors' creditors at that time, and PHH would be thwarted in this case from enforcing its lien that Debtors acknowledged *and reaffirmed* in the 2008 Case.

Thus, independent of the summary judgment ruling concerning the notary acknowledgment, PHH also is entitled to summary judgment under the doctrine of judicial estoppel.

## IV. CONCLUSION

Based on the record, PHH has met its burden of proving that there is no genuine dispute of material fact and that it is entitled to a judgment as a matter of law against Debtors on the Objection to Claim. An Order consistent with this Memorandum will be entered.

FILED: April 16, 2020

                                        BY THE COURT

                                        *s/ Suzanne H. Bauknight*

                                        SUZANNE H. BAUKNIGHT
                                        UNITED STATES BANKRUPTCY JUDGE